George H. Brick v. Commissioner.
Brick v. Commissioner
Docket No. 110149.
United States Tax Court
1943 Tax Ct. Memo LEXIS 335; 1 T.C.M. (CCH) 1011; T.C.M. (RIA) 43204; April 29, 1943
*335 Charles Kurz, C.P.A., 285 Madison Ave., New York City, for the petitioner. William G. Ruymann, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This proceeding involves the redetermination of an income tax deficiency of $157.24 for the year 1939. The single question presented is whether or not the petitioner was the head of a family during all of the taxable year, and therefore entitled to a credit of $2,500 against net income under section 25 (b)(1) of the Internal Revenue Code. Findings of Fact The petitioner is an unmarried individual residing in New York City, New York. He filed his return for the taxable year with the collector for the third district of New York. Until 1920 the petitioner lived with his father and mother and a sister, Marion, in a home maintained by the father at 267 West 89th Street, in New York City. In that year petitioner's father died. Thereupon the petitioner assumed the burden of maintaining the home for himself and his mother and sister. In about 1925, the family moved to 230 West 79th Street, New York, where the petitioner continued to maintain a home for all of them until February, 1939, when his mother died. *336 Thereafter the petitioner and his sister resided together at the same address until some time in 1941. They then removed to 130 East 75th Street, where they have both continued to reside since then until the present time. After his father's death, the petitioner provided for payment of all household expenses for himself and his mother and sister. The leases for the apartments in which they lived as well as the renewals thereof were decided upon or approved by him. He hired or consented to the hiring of maids for the family, and furnished the money for payment of their salaries. All decisions concerning the running of the home were made with his consent. During his mother's lifetime, he turned over money to her each month for payment of household expenses. Since that time he has followed a similar practice with his sister, giving her $400 a month for that purpose. In the taxable year the petitioner's sister, Marion, was 43 or 44 years of age. She was not under any physical disability, and held full-time employment as a teacher in the public schools of New York City. In that position, she earned $2,514.18 during the year, of which she received in cash about $2,300, the balance being *337 deducted and placed to the credit of her account in a teachers' retirement fund maintained by the school system. She owned no property, but did maintain a bank account in which she deposited her salary checks, and the money which her brother gave to her for running of the home. She contributed none of her own earnings toward household expenses in the taxable year, but used it all for the payment of personal expenses. During the last ten months of the year the petitioner turned over to her $4,149, and in addition paid joint expenses for himself and his sister of $1,282.58, and personal expenses for her amounting to $149. During the same period she expended about $3,660 for household expenses, including rent, food, utilities, and servants' salaries, and about $2,300 for purely personal expenses. Of the latter amount, about $360 came from the money which the petitioner had turned over to her, and the balance came from her own earnings, her salary checks during the ten month period having amounted to about $1,920 in the aggregate. Before her death, the petitioner's mother exacted a promise from the petitioner that he would always take care of his sister, Marion. Marion always looked *338 to her brother for advice and guidance, after her father died. She never made a large purchase or took a lengthy trip without his consent. She had one sister, older than she, who was married and lived elsewhere and who made no contribution toward Marion's support. No one other than the petitioner contributed to Marion's support. If Marion needed money, she would ask the petitioner for it and he would give it to her. On all income tax returns filed by him since 1920, the petitioner made claim for personal exemption credit as the head of a family, and, until the taxable year, the claim was always allowed. On his return for the taxable year, similar claim was made for a credit of $2,500. The respondent determined that the amount of credit allowable was only $1,250. Opinion The only question here presented is whether the petitioner is entitled to a personal exemption of $2,500 as the head of a family under section 25(b)(1) of the Internal Revenue Code. The statute itself does not define the term "head of a family," but we have heretofore approved the definition contained in section 19.25-4 of Regulations 103 (see Joseph N. Kallick, 45 B.T.A. 992, and *339 cases there cited at pp. 993, 994) as meaning "an individual who actually supports and maintains in one household one or more individuals who are closely connected with him by blood relationship, relationship by marriage, or by adoption, and whose right to exercise family control and provide for these dependent individuals is based upon some moral or legal obligation." It is clear that the petitioner complies with some of the requirements of the definition. The elements of maintenance of the home and close blood relationship unquestionably exist. The petitioner contends that the other essentials also exist. He argues in effect that to the $3,660 spent by Marion for household expenses out of money furnished by the petitioner there must be added the $1,282.58 paid directly by the petitioner for joint expenses of himself and his sister; and that, therefore, total expenses of support of Marion and the share of expenses of home maintenance attributable to her and paid by him was in excess of $2,900, that figure being composed of one-half of the $3,660, one-half of the $1,282.58, all of the $149 paid by him for her personal expenses, and all of the $360 which she spent on herself from money *340 furnished by him. It is doubtful whether most of the joint expenses of $1,282.58 paid by petitioner may be considered as expense of maintenance of the home and support of its occupants. Included are such items as fees paid to a golf professional, $90; club dues, $280; entertainment expenses, $430; and flowers, candy, liquor and tobacco, $250. However, we find it unnecessary to pass upon these questions or upon the question whether, on the facts of this case, the petitioner may be said to hold the right to exercise family control necessary to his qualification as head of the family. Assuming, without deciding, that the petitioner's contentions with respect to these controversial questions are proper, we think that the respondent must nevertheless be sustained. As we said in Richard H. Baumbach, 42 B.T.A. 88, the applicable section of the regulation "has for its main premise the maintenance by a taxpayer in one household of 'dependent individuals.'" In that case we denied an exemption as head of the family to a taxpayer whose claim was grounded upon maintenance and support of an adult son engaged in the practice of dentistry whose income exceeded *341 the expense of maintaining his professional office by less than $150, and who was otherwise maintained and supported by his father in the latter's home. We there said: * * * Ordinarily, we do not think of an adult who is mentally and physically sound as a dependent, and to so classify the son in this case would require an abrupt turn in common thought and speech. To hold that an adult individual under the facts here is a dependent would make that term applicable in a variety of situations that were surely not contemplated when the regulation was drafted. To carry the petitioner's view to its logical conclusion would be to say that every adult who continues to reside at the family abode and who does not earn in full a sum equal to his living expenses is a dependent, without regard to mental and physical capacity and the possibility of earning a living in another field of endeavor. Petitioner's view would also involve the application of a highly variable standard, varying according to each individual's ideas as to the sum necessary for his proper support and maintenance. It is our opinion that the word "dependent" in the regulations can not properly be extended to a case like this *342 where the individual is an adult, well educated, in good health, engaged in a profession, but simply fails to earn enough in his practice to fully support himself. * * * We think the instant proceeding is indistinguishable, in principle, from the Baumbach case. The petitioner, upon brief, places reliance upon the more recent decision of Joseph N. Kallick, supra, in which exemption was allowed. The two cases are not in conflict. The distinction between them is pointed out in the opinion in the latter. In the cited case a son supported his mother, and we pointed out that the respondent has recognized the moral obligation of a son to support a mother. We noticed also the local statute requiring support of a parent unable to support herself. The mother was in a fair state of health. She earned only $170 during the taxable year from insurance premiums, working a few hours a day. We think it clear that the position of the son in the Baumbach case is much more nearly parallel to that of the sister herein, than is that of the mother in the Kallick case. See also Charlotte Hoskins, 42 B.T.A. 117. We hold that the *343 petitioner is not entitled to the exemption claimed. Decision will be entered for the respondent.